IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE: §
§            CASE NO. 05-42695-H2-11
SHAFFIN ALI  MOHAMED §

**MEMORANDUM OPINION AND FINDINGS REGARDING  ORDER
FOR U.S. TRUSTEE TO APPOINT TRUSTEE AND EXAMINER (doc # 459)**

In a prior memorandum and order[1] (the "Order Denying Motion for Directed Verdict") the Court denied Debtors' motion to dismiss Deborah Mohamed's ("Ms. Mohamed") motion for appointment of a trustee, for conversion, or for dismissal of these cases.  Subsequent to that decision, Debtors presented their evidence in opposition to the motion.  Some of the *prima facie* case described in the earlier memorandum has been adequately rebutted.  The Court does not, in this memorandum, attempt to address all issues raised in the prior memorandum to indicate whether or not the *prima facie* case was adequately rebutted.  Failure to address an issue in this memorandum does not imply that the prior conclusions were adequately rebutted.  In this memorandum, the Court addresses only those findings that are sufficient and compelling, in themselves, for the decision to appoint a trustee and an examiner, and potentially, after hearing reports from the trustee and examiner, to convert or to dismiss these cases.

The Court rendered its decision orally from the bench on May 24, the day following conclusion of the presentation of evidence, and the Court issued a written order on that date for appointment of a trustee in Dr. Mohamed's personal case and for appointment of an examiner in the corporate cases. This memorandum supplements and completes the oral findings and conclusions.

The principal protagonists in these jointly administered chapter 11 cases are spouses who were fighting in state court for divorce when Dr. Mohamed filed bankruptcy petitions for himself personally and for a number of related corporate entities.  Ms. Mohamed filed a motion (docket # 105) for appointment of a trustee, or, alternatively, for conversion or dismissal of these bankruptcy cases.  The hearing on the motion for a trustee, conversion, or dismissal began on March 7 and was concluded on May 23, 2006.

STATUTORY STANDARD

---

[1]  Docket # 450.

Section 1104 of the Bankruptcy Code provides that the court shall appoint a trustee

> ...[F]or cause, including fraud, dishonesty, incompetence, or gross
> mismanagement of the affairs of the debtor ... either before or after the
> commencement of the case, or similar cause ... [or]

> ... [I]f such appointment is in the interests of creditors, any equity
> security holders, and other interests of the estate...

Section 1112(b)[2] of the Bankruptcy Code provides that the court may convert the case to chapter 7 or may dismiss it for cause, including:

> (1)     Continuing loss to or diminution of the estate and absence of a
> reasonable likelihood of rehabilitation ...

## EVIDENTIARY STANDARD

In the Order Denying Motion for Directed Verdict, the Court concluded that fraud, dishonesty, gross mismanagement, and similar cause for appointment of a trustee need only be proved by a preponderance of the evidence, not by "clear and convincing" evidence.  The Court concluded that the same standard applies (under the circumstances of this case) to finding "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation".  Having now heard all the evidence, the Court concludes that some of the findings of fact set forth below have been proved by clear and convincing evidence.[3]  The Court does not distinguish between findings that it concludes are supported by "clear and convincing" evidence from findings supported by only a "preponderance of the evidence" since the Court continues to believe that "preponderance of the evidence" is the appropriate standard in this case.

Dr. Mohamed cites *In re Cajun Elec. Power Coop, Inc.,* 69 F.3d 746, 749 (5th Cir. 1995) for the proposition that Ms. Mohamed must prove "cause" for appointment of a trustee  by clear and convincing evidence.  The cited decision does so state.  However, that statement is in Part IV of the opinion that was withdraw entirely by the Court of Appeals for the Fifth Circuit on rehearing at 74 F.3d 599 (5th Cir. 1996) *cert. den.* 136 L.Ed.2d 15, 117 S.Ct 51 (1996).

---

[2]  The changes made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 442(a) (2005) do not apply to this case since it was commenced prior to October 17, 2005.

[3]  Dr. Mohamed's testimony actually supported Ms. Mohamed's case is some ways.

> We therefore withdraw all of section IV of the prior opinion found at
> 69 F.3d 746 and we adopt the reasoning of the dissent in its place. (74
> F.3d 599, 600 (5th Cir. 1995).)

It is also important to note that even the withdrawn section of the opinion was simply based on a treatise, not on an established line of jurisprudence.[4]   That treatise, like *In re Sharon Steel Corp*, 871 F.2d 1217 (3rd Cir. 1989) and *In re Marvel Entertainment Group, Inc*. 140 F.3d 463 (3rd Cir. 1998) base the imposition of a heightened evidentiary standard on a statutory preference for allowing a competent and experienced managerial team to remain in place after a debtor files a chapter 11 bankruptcy case.  Stated differently, the cases suggest that clear and convincing evidence is needed to prove the need to replace an experienced, competent management team.   There are at least three problems with the logic of *Collier, Sharon Steel, and Marvel* as it applies to allegations of fraud and mismanagement and as it applies to a determination of the "best interest of creditors" under the circumstances of this case.

First, if the court finds "fraud, dishonesty, incompetence, or gross mismanagment of the affairs of the debtor" by a preponderance of the evidence, the reason for keeping management in place (and thus the reason for a heightened evidentiary standard) is questionable at best.  Why would Congress favor keeping management in place if a moving party proved, by a preponderance of the evidence, that management was guilty of  "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor"?

Second, the Supreme Court has indicated that even though proof of fraud generally requires a heavier evidentiary burden in state courts, the same elevated standard does not necessarily apply in a bankruptcy court action based on fraud.  The standard to prove fraud sufficient to deny dischargeability of debts is "preponderance of the evidence", not "clear and convincing".[5]   In so holding, the Supreme Court reversed years of precedent that is more compelling than the cases cited above.  If the Supreme Court applies the "preponderance of the evidence" standard to prove fraud as an element of denial of dischargeability of debts, it is likely that they would apply the same standard to fraud and related misconduct to a motion to appoint a trustee.

Finally, there is no allegation that there is an ongoing business to manage in these cases. Debtors' plan calls for the liquidation of all material assets, which consists of a fairly small number of parcels of real property.  The proposed liquidation process consists of the engagement of real estate brokers to sell real property.  Dr. Mohamed's role is merely to receive advice from the real estate

---

[4] Footnote 12 of the withdrawn Part IV merely cites *Collier on Bankruptcy* as authority.

[5] *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991).

professional, to list the property for sale, and to accept purchase offers or to make counteroffers. There was no evidence that Dr. Mohamed has superior ability or experience in that role. Dr. Mohamed's own plan proposes to leave all other decisions, such as recovery of transfers and objections to claims, to a trustee to be appointed under a plan. It is hard to imagine that Congress intended an elevated burden of proof to allow a debtor to exercise the powers, duties, and responsibilities of a debtor in possession/trustee when it is conceded that there is no business to reorganize and that the administration of the estate is exactly similar to a chapter 7 liquidation.

Therefore, the Court concludes that fraud, dishonesty, incompetence, gross mismanagement, or similar cause need only be proved by a preponderance of the evidence and that the "best interest of creditors" need only be proved by a preponderance of the evidence when there is no business to manage or reorganize and the debtor has shown no experience or expertise that a chapter 7 trustee would not bring to the task of case administration.[6]

Dr. Mohamed has cited no authority for the proposition that a "clear and convincing" burden of proof applies to a decision to convert a case or to dismiss a case. The Court assumes that Dr. Mohamed does not challenge the generally applicable "preponderance of the evidence" standard for such motions.

## CONCLUSIONS

<u>Incompetence, or gross mismanagement of the affairs of the debtor ... either before or after the commencement of the case, or similar cause:</u>

The Court concludes that Dr. Mohamed is responsible for "incompetence, or gross mismanagement of the affairs of the debtor ... either before or after the commencement of the case, or similar cause."

1.    Incompetence or gross mismanagement.

    a.    Dr. Mohamed's medical practice, prior to 2005, was 90% concentrated in treating workmen's compensation patients. In that practice, he earned "several million dollars per year."[7] He lost his "worker's compensation certification" because of a finding by

---

[6] The Court does not imply that "clear and convincing" evidence would be required under other circumstances. That issue would be *dictum* in this case.

[7] That income may have included, or may have been in addition to, payments for use of a pharmaceutical prescribed by Dr. Mohamed and compounded by a pharmacy owned by Dr. Mohamed's former wife. Dr. Mohamed was not sure how much he and/or his professional association

the applicable state authority that he "overutilized" services.  He is currently unable to continue his medical practice of treating workmen's compensation patients, but Dr. Mohamed retains his medical license.  He has not resumed the practice of medicine and currently works as a consultant to Satex, a company to whom Dr. Mohamed sold the accounts receivable from his workmen's compensation practice.  Dr. Mohamed did not explain what consulting services he provides to Satex or why he has not reestablished his medical practice.[8]

b.    Dr. Mohamed testified that he assigned the receivables to Satex because he did not have the staff to collect them.  Satex has certain obligations under the agreement.  Dr. Mohamed, as controlling person of the debtors in possession, was responsible to ensure that Satex fulfilled those obligations, but his efforts were wholly inadequate.  He did not demand timely certifications from Satex and has not adequately monitored collection and payment of amounts due to the estates.  His testimony was not clear concerning where the proceeds of those collections are now deposited.[9]

2.    Similar cause.

a.    Dr. Mohamed has not fulfilled, and is not able adequately to fulfill, other duties of a debtor in possession.

i.    Dr. Mohamed's status as an employee of Satex presents an inherent conflict of interests with his duty (as controlling person of the bankruptcy estates) to enforce Satex's obligations under the assignment of receivables.  Dr. Mohamed recognizes that conflict.  When asked by his counsel whether he has considered suit against Satex, Dr. Mohamed testified:

> Well, I'm not inclined to sue my
> employer, but I have discussed it with
> my professionals.[10]

ii.    Prior to the hearing on appointment of a trustee, Dr. Mohamed filed monthly operating reports that were inaccurate.  Dr. Mohamed's explanation was that

---

were paid in connection with sales of that pharmaceutical, but in 2003 and 2004 it "may have" amounted to $2 million per year.  Dr. Mohamed was vague about the rights to that formula.  Dr. Mohamed indicated that the formula was worthless and that the agreement with his former wife's pharmacy has been terminated.

[8]   When asked by his counsel how much he makes now, Dr. Mohamed testified, after a very long pause, that he earns $12,000 per month from Satex.

[9]   Recording of May 23 hearing, 2:50:00 to 2:52:00.

[10]   Recording of May 23 hearing, at approximately 2:50:00

the error was counsel's fault and that corrective measures had been taken. Nevertheless, subsequent and more recent monthly operating reports were not timely filed.

iii.    Dr. Mohamed formed many wholly owned corporations in the years prior to filing this bankruptcy case.  Except for the professional association(s) through which Dr. Mohamed practiced medicine, Dr. Mohamed was superficial in explaining the purpose of the complex corporate structure.  Dr. Mohamed testified that the entities were formed for tax reasons and to protect his assets for his family from creditors' claims.[11]  But he could not clearly explain the tax objectives.  More important, Dr. Mohamed could not clearly articulate, and apparently does not adequately understand, the consequence of this financial structure on ownership of assets and on the proper legal application of assets to satisfy claims.[12]  He stated that a "deed surfaced" that confused the ownership of the West Friar Tuck property; he could not adequately clarify how title became confused among himself, his wife, and the Sussex entity.[13]  He was not sure what property Oakwood owned.[14]  Dr. Mohamed could not recall the various offices that he held in the corporations.[15]  He was not sure, which entity owned the Beltline property.[16]  He testified that his proposed plan of reorganization would combine corporate entities to pay all debts because that was the right thing to do.  His proposal was also justified on the basis that he had paid little or no attention to corporate formalities and therefore the entities should all be treated as alter egos.  He seemed to have given little or no thought to competing legal rights and claims or creditors or to claims of other equity interest owners in those entities.

---

[11]  Dr. Mohamed testified that his objective was to protect his assets "from" his family, then corrected himself by saying that it was to protect his assets "for" his family.   Recording of May 23 hearing, at approximately 4:02:00.

[12]  More detail about the complex corporate relationships is set out below in the discussion of Debtor's Exhibit 24.

[13]  Recording of May 23 hearing, 12:39:58 to 12:47:13.

[14]  Recording of May 23 hearing, 2:25:00 to 2:30:00.

[15]  Recording of May 23 hearing 4:02:05 to 4:03:10.

[16]  Recording of May 23 hearing, 5:40:30 to 5:41:33.

iv.    The principal business and financial activity in this case has been the sale of real property owned by the various corporate entities.  However, Dr. Mohamed did not appear to be conversant with the details of some of those transactions.  In his testimony on May 23, Dr. Mohamed clarified his earlier testimony, but the Court is convinced that he is not adequately familiar with the transactions.

<u>"Continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation ..."</u>

The Court concludes that there is continuing loss to or diminution of the estate.  Nine months into this case, there is only one plan on file (Dr. Mohamed's plan).  That plan does not provide for rehabilitation, it calls for appointment of a trustee and for liquidation. That plan is not likely to be confirmed and consummated.  These findings are explicit statutory cause for dismissal or conversion, but the Court concludes that they also constitutes "similar cause" for appointment of a trustee in appropriate circumstances.

Dr. Mohamed's motion for directed verdict  cites the extreme animosity between the principal protagonists in this case (Dr. and Ms. Mohamed), who are battling for divorce in the state court.  That memorandum cites the hundreds of thousands, and perhaps over $1 million in attorney's fees, related to this case.  This expensive, aggressive litigation is likely to continue and constitutes continuing loss or diminution of the estate.

After 9 months, there is only one chapter 11 plan that has been proposed and that plan calls for liquidation, not rehabilitation.  More important, the Court cannot conclude, on the evidence before it, that the plan has reasonable prospects for confirmation and consummation.

Debtor's Exhibit 24, the "Organization Chart," is a chart of the relationships of the approximately 25 entities that are owned or controlled by Dr. Mohamed, including the 8 that are debtors in this bankruptcy case.  In proposing his plan, Dr. Mohamed treats them all as if he were their sole owner and as if all assets of each corporation should be available to satisfy all of his personal debts and all debts of all of the debtor corporations: a single pot for payment of all debt.  He proposes this solution on testimony that since he disregarded the corporate formalities the corporations should be substantively consolidated; he also bases this proposal on his view that using the assets of all corporations to pay the debts of all debtor entities is simply the right thing to do.  While that result might eventually obtain, it is much too great an assumption to make at this time, on such a sketchy, uncritical presentation.

There is reasonable basis for concern that a more thorough, thoughtful investigation of competing interests and claims might compel a different conclusion.  For example, the Organization Chart, prepared by Dr. Mohamed with counsel's help, indicates that Ms. Mohamed owns a 49%

interest in Sussex 1999 Ltd. which owns (directly or indirectly) much of the valuable real estate that will be used to pay debt.  However, although Dr. Mohamed only owns part of Sussex, much of the debt that would be paid under the plan is Dr. Mohamed's debt or is debt owed by entities of which he is the sole owner.[17]  Dr. Mohamed testified that his business practice was to use funds generated from his medical practice to create separate entities (some of which were partly owned by others) and then those separate entities used the cash as down payments to purchase real property that secured deeds of trust used to obtain the remainder of the purchase price.  There was no evidence on whether the funds capitalizing the corporations was debt or equity, and inadequate evidence of whether the other owners of the corporations held valid equity interests.[18]  There was no evidence that Dr. Mohamed analyzed, or was adequately disinterested to analyze, the competing rights and claims of these competing entities.  To make matters even more complex, some entities have already been liquidated and substantial sums transferred to interest owners who appear to be Dr. Mohamed's relatives.  The *bona fides* of those transactions, and the potential recovery (or not) of those transfers, was wholly inadequate.  The Court does not see sufficient evidence to justify an assumption that substantive consolidation is likely and that the plan can be confirmed.[19]

In addition, Dr. Mohamed's plan contemplates that all issues with respect to objections to claims, analysis and recovery of fraudulent/preferential transfers, and pursuit of causes of action (except for claims against Ms. Mohamed and her counsel) will be relegated to a trustee to be appointed under the plan.[20]  The rights of the creditors and equity interest owners of the eight debtor entities and the

---

[17]  The evidence concerning debt of the various estates was not compelling.  Dr. Mohamed's plan leaves to a trustee, to be appointed after confirmation of a plan, to review and to object to claims, except for certain claims of Ms. Mohamed and her counsel.  The evidence concerning claims of various entities, therefore, was simply that claims had been filed in certain cases.  Bankruptcy Code § 502(a) provides that a proof of claim is allowed unless timely objection is filed.  Therefore, the substantial claims of Travelers and Plaza Medical Center Pharmacy which were discussed in the hearing are currently allowed claims.

[18]  Debtor's Exhibit 24 has no indication that the equity interests of other owners is not a valid interest.

[19]  Counsel for the corporate entities proposed an amendment that would provide, in the alternative, for separate administration of the estates if substantive consolidation is not ordered.  The Court is unwilling to conclude that a plan, not yet filed, is in prospect of confirmation.

[20]  Dr. Mohamed, as debtor in possession, has filed objections to claims and adversary proceedings to recover funds from Ms. Mohamed and her counsel.  However, Dr. Mohamed's testimony indicated that he did not intend to investigate or to object to other claims or to try to recover any other transfers and intended to leave that to the discretion of a trustee to be appointed under his

potential for recovery of transfers are essential factors in determining whether statutory requirements for plan confirmation are met.  Dr. Mohamed's plan concedes that appointment of a trustee is essential to determine these issues.

Finally,  the Court does not see a plan in prospect because the animosity between Ms. Mohamed and Dr. Mohamed, and between Travelers' Insurance and Dr. Mohamed is sufficient to generate years of litigation, through appeal.  More important, although Dr. Mohamed alleged substantial support for a plan of reorganization by creditors, the only evidence of support was from creditors who are oversecured and would apparently be paid in full on confirmation.  Those creditors would apparently be unimpaired and not entitled to vote.  There is simply no evidence of a plan that has reasonable prospects for success.

"[I]nterests of creditors, any equity security holders, and other interests of the estate..."

As set forth above, Dr. Mohamed has conflicts of interests in serving as a fiduciary of his own estate and as serving as controlling person of the estates of the corporate entities.  In addition, unnecessarily aggressive and expensive litigation is engendered by Dr. Mohamed's service as control person of these estates.  The evidence does not indicate that Dr. Mohamed brings to these cases any special experience or expertise that a trustee would not bring.  Therefore, the Court concludes that the interests of creditors, equity security holders, and other interests of the estate justifies appointment of a trustee.

## DETERMINATION OF APPROPRIATE REMEDY

The Court concludes that there is cause for appointment of a trustee under both section 1104(a)(1) and (a)(2).  Therefore, appointment is mandatory, after consideration of the effect of the transgression on the administration of the case, the costs involved, and other policies found in other parts of the Bankruptcy Code: *Committee of Dalkon Shield Claimants v. A.H. Robins Company, Inc.* , 828 F.2d 239 (4th Cir. 1987).  The Court has considered those other factors, as set forth above, and has ordered the appointment of a trustee in Dr. Mohamed's case.  However, the Court cannot determine whether the same trustee can serve as trustee for Dr. Mohamed's individual case and can also serve as trustee for one or more of the corporate cases.

After carefully reviewing Debtor's Exhibit 24, after considering the testimony concerning intercompany transfers and claims, and after considering the differences in ownership of the separate entities the Court concludes that there is a material possibility of conflicts among the entities, potentially involving recovery of transfers and challenges of ownership interests and proofs of claim among the

plan.

entities.  The Court is further convinced that the facts necessary to determine these questions have not been developed, much less presented to the Court at any of the numerous hearings in this case. Appointment of a single fiduciary for all estates, or even appointment of a single fiduciary for more than one estate, might be problematic since that fiduciary might have material, divided interests and loyalties. But appointment of separate trustees for each estate (with separate professionals for each trustee) would be expensive, and should be avoided unless clearly necessary.

Therefore, the Court has directed the U.S. Trustee to appoint an examiner in the corporate cases.  That examiner is required to report to the Court on the potential competing and conflicting claims among the various estates and on whether one or more estates can share the same trustee.  The Court has required a similar report from the trustee of Dr. Mohamed's estate.  In addition, since every party in interest in this case has concluded that liquidation is the only option, and since liquidation involves merely the sale of real property, potential lawsuits to recover transfers, and objection to claims, the Court has required the trustee and the examiner to report concerning whether conversion is a better option than continuing these cases in chapter 11.

The Court reserves decision on whether to appoint a trustee for the corporate entities and reserves a decision on conversion or dismissal until those reports are received.  After receiving these reports, after hearing the recommendation of the U.S. Trustee with respect to these reports, and after hearing other parties in interest who wish to be heard, the Court will direct the U.S. Trustee to appoint one or more trustees for the corporate cases, or will convert or dismiss the cases.

SIGNED    May 30, 2006

_Wesley W. Steen_

_____
WESLEY W. STEEN
UNITED STATES BANKRUPTCY JUDGE